FILED
CLERK, U S DISTRICT COURT
AUG - 9 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                     DEPUTY

ENTERED
CLERK, U S DISTRICT COURT
AUG 10 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                     DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only___

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE COMPUTER SCIENCES CORPORATION DERIVATIVE LITIGATION**<br><br>This Document Relates to All Cases: | Lead Case No. CV 06-05288 MRP (Ex)<br><br>Consolidated with:<br>- CV 06-05356 MRP (Ex)<br>- CV 06-06512 MRP (Ex)<br><br>**CORRECTED ORDER GRANTING DEFENDANT COMPUTER SCIENCES CORPORATION'S MOTION TO DISMISS PLAINTIFFS' SHAREHOLDER DERIVATIVE COMPLAINT FOR FAILURE TO PLEAD DEMAND FUTILITY PURSUANT TO FED. R. CIV. P. 23.1 AND 12(B)(6)** |

## I.
## INTRODUCTION

Plaintiffs[1] are shareholders of Nominal Defendant Computer Sciences Corporation ("CSC" or the "company") and have brought this derivative case alleging the improper backdating, springloading and re-pricing of options to buy CSC stock, which were granted to certain CSC executives between May 1996 and May 2004. On March 26, 2007, this Court dismissed Plaintiffs' original complaint

---

[1] Plaintiffs include lead plaintiff, Laborers International Union of North America National Industrial Pension Fund, and consol plaintiffs, LIUNA Staff and Affiliates Pension Fund and Daniel Huffman.

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77

for failure to make a demand on CSC's board of directors or to properly plead that demand was excused, pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6).[2] The Court also granted Plaintiffs leave to amend their complaint, and Plaintiffs filed a Verified Amended Consolidated Shareholder Derivative Complaint on April 16, 2007 (the "Amended Complaint" or "AC"). The Amended Complaint asserts a series of exclusively derivative state and federal law claims against two sets of Defendants: 1) CSC executives who received and/or participated in the granting of the improper stock options (collectively, the "Officer Defendants" (see AC ¶¶ 28-38)); and 2) members of the CSC board of directors who approved the improper option grants and/or any financial statements or disclosures that misrepresented information related to the option grants (collectively, the "Director Defendants" (see AC ¶¶ 39-52)). Plaintiffs continue to allege demand futility and have not made a demand on CSC's board. Defendants have moved to dismiss Plaintiffs' Amended Complaint, arguing: 1) Plaintiffs have failed to establish standing by alleging that they owned CSC stock at the time the questioned option grants occurred, pursuant to Rule 23.1; and 2) Plaintiffs have failed to make a demand on CSC's board or to properly plead with particularity that demand is excused under Federal Rules of Civil Procedure 23.1 and 12(b)(6).[3]

The Court finds that Plaintiffs have not alleged that they owned CSC stock during all of the relevant periods when the questioned transactions occurred as well

---

[2] (See Mar. 26, 2007 Order Granting Defendant Computer Sciences Corporation's Motion to Dismiss Plaintiffs' Shareholder Derivative Complaint for Failure to Plead Demand Futility Pursuant to Fed. R. Civ. P. 23.1 and 12(b)(6) (the "Dismissal Order").)

[3] (See Nominal Defendant CSC's Motion to Dismiss Plaintiffs' Amended Shareholder Derivative Complaint for Failure to Plead Demand Futility Pursuant to Fed. R. Civ. P. 23.1 and 12(b)(6), filed May 14, 2007 (the "CSC Motion"); Director and Officer Defendants' Motion to Dismiss Plaintiffs' Amended Shareholder Derivative Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), filed May 14, 2007; Defendant Thomas A. McDonnell's (Joined) Motion to Dismiss Plaintiffs' Amended Shareholder Derivative Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), filed May 14, 2007.)

as during the pendency of this case, as is required under Rule 23.1. Further, while all of Plaintiffs' claims are derivative, thereby requiring a demand on CSC's board under governing Nevada law, the Court finds that Plaintiffs still have not pled with sufficient particularity why demand should be excused in this case. Accordingly, the Court <u>GRANTS</u> Nominal Defendant CSC's Motion to Dismiss Plaintiffs' Amended Complaint.

## II.
## BACKGROUND

The Court detailed the background of this case in its March 2007 Dismissal Order and need not repeat it here.[4] In that Order, the Court found that Plaintiffs had not made particularized allegations raising a reasonable doubt as to the independence or disinterestedness of a majority of CSC directors who would be considering a demand to investigate the challenged options backdating transactions. Plaintiffs therefore did not show that demand was excused in this case, under Rule 23.1, *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), and applicable Nevada law. *See Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178-85 (Nev. 2006) (applying Delaware law's particularity requirements for pleading demand futility under *Rales*). The Court also found that Plaintiffs failed to establish standing by sufficiently alleging that they owned CSC stock during all periods relevant to the questioned transactions and during the pendency of this suit, as required by Rule 23.1.

This case has seen several developments since the first Dismissal Order. First, on February 28, 2007, CSC filed a Form 8-K with the SEC that discussed the results of its own internal investigation of its stock options practices by a "Special Committee" of two newly-elected independent directors. *See* Computer Sciences

---

[4] *See In re Computer Sciences Corp. Derivative Litig.*, Lead Case No. CV 06-05288 MRP (Ex), 2007 U.S. Dist. LEXIS 25414, 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007).

-3-

Corporation, Report of Unscheduled Material Events or Corporate Changes (Form 8-K) (Feb. 28, 2007) (the "Feb. 28, 2007 Form 8-K").[5] Among other things, the Form 8-K stated that: 1) 9,234 of the 13,564 stock option grants made by CSC between March 1, 1996 and July 31, 2006 required some form of modification to fix errors in their timing, pricing or accounting; 2) 3,906 of the option grants had to be changed to a later date on which the closing stock price was higher, requiring additional compensation expense; 3) these adjustments resulted in the company taking a cumulative non-cash compensation expense of approximately $68 million before taxes; and 4) that "[o]ption grants to Senior Executives were approved by the Compensation Committee or the Board of Directors." Feb. 28, 2007 Form 8-K, at 2, 4.

Second, Plaintiffs seized upon CSC's Form 8-K disclosures in their Amended Complaint. Most notably, Plaintiffs have supplemented their original allegations, which focused only on backdating, with information from the Form 8-K to now allege that CSC engaged in wrongful springloading "and/or" re-pricing of options as well. (See AC ¶¶ 1-21, 81.) Plaintiffs further allege that the Form 8-K's statement that unspecified option grants were approved by "the Board of Directors" constitutes an admission by CSC that its entire board knew of, if not directly approved, the challenged option grants. (AC ¶ 12.)

Otherwise, many of Plaintiffs' core allegations are unchanged. Plaintiffs still allege that between 1996 and 2004, the CSC Director and Officer Defendants "colluded" with one another to: 1) improperly backdate, springload "and/or" re-price and option grants to CSC Chief Executive Officer ("CEO") Van Honeycutt and several other CSC executives in violation of shareholder-approved stock

---

[5] The Form 8-K did not disclose the identity of the two independent directors comprising the "Special Committee" that investigated the stock option grants, but at the hearing on CSC's Motion, CSC's counsel stated that the two directors were Patrick and Barram. Further, both parties agreed that the Special Committee did not constitute a "Special Litigation Committee" for the purposes of evaluating a demand made by Plaintiffs.

option plans; 2) improperly record and account for these option grants in violation of GAAP; 3) improperly take tax deductions based on these option grants in violation of the Internal Revenue Code; 4) produce and disseminate false financial statements and other SEC filings that improperly accounted for these option grants and concealed their existence; and 5) improperly exercise or permit the exercise of previously manipulated options. (AC ¶ 17.)[6]

## III.
## DISCUSSION

### A. Legal Standards

#### 1. Motion to Dismiss under Rule 12(b)(6)

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true and construed

---

[6] Plaintiffs' Amended Complaint identifies the following Defendant groups:
- Director Defendants: Irving W. Bailey, II ("Bailey"), F. Warren McFarlan ("McFarlan"), Thomas H. Patrick ("Patrick"), Stephen L. Baum ("Baum"), Rodney F. Chase ("Chase"), David J. Barram ("Barram"), Thomas A. McDonnell ("McDonnell"), William R. Hoover ("Hoover"), James R. Mellor ("Mellor") and William P. Rutledge ("Rutledge") (AC ¶ 51);
- Officer Defendants: Van B. Honeycutt ("Honeycutt"), Leon J. Level ("Level"), Thomas R. Madison, Jr., Ronald W. Mackintosh, Milton E. Cooper, Edward P. Boykin, Michael W. Laphen ("Laphen"), Paul M. Cofoni ("Cofoni"), Paul T. Tucker and Hayward D. Fisk ("Fisk") (AC ¶ 38);
- Compensation Committee Defendants: Bailey, McFarlan and Patrick (AC ¶ 46);
- Audit Committee Defendants: Bailey, Patrick, Baum, Chase and Barram (AC ¶ 50);
- Nominating and Corporate Governance Committee: Baum, Chase and McFarlan (AC ¶ 142); and
- Insider Selling Defendants: Cofoni, Fisk, Honeycutt, Laphen and Level (AC ¶ 124).

in the light most favorable to the nonmoving party. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Assoc. Gen. Contractors of Am. v. Metro. Water Dist. of So. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted).

2. Shareholder Derivative Suits under Rule 23.1 and Nevada Law

Under Federal Rule of Civil Procedure 23.1, a shareholder seeking to vindicate the interests of a corporation through a derivative suit must first make a demand on the corporation's directors or plead with particularity the reasons why such a demand would have been futile. Fed. R. Civ. P. 23.1. All of Plaintiffs' claims in this case are derivative, requiring a demand on CSC's board or a particularized showing of demand futility. Rule 23.1, however, does not establish the circumstances under which demand would be futile, which are instead determined under the law of CSC's incorporating state, Nevada. *In re Silicon Graphics, Inc. Secs. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991)). Nevada law is consistent with both Federal Rule of Civil Procedure 23.1 and Delaware law regarding demand futility pleading requirements, and Nevada courts look to Delaware law for guidance on issues of corporate law. *See* Nev. Rev. Stat. § 41.520(2) (West. 2007), *and* Nev. R. Civ. P. 23.1 (requiring particularized pleading for a plaintiff's failure to make a demand on the board); *see also Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1179-80 (Nev. 2006) (applying Delaware law's particularity requirements for pleading demand futility). However, on a motion to dismiss for failure to comply with the requirements of Rule 23.1 and Delaware law, a court limits its

consideration of the facts to those particularly alleged in the complaint, thus Plaintiffs' pleading burden is more onerous than that required to withstand an ordinary motion to dismiss. *Aronson*, 473 A.2d at 813. Conclusory "allegations of facts or law not supported by allegations of specific fact may not be taken as true." *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991).

In order to evaluate whether demand is futile and excused, Nevada courts have adopted two different tests employed by Delaware courts. *See, e.g., Shoen*, 137 P.3d at 1181-84 (evaluating and applying the two Delaware law demand futility tests, under *Rales*, 634 A.2d at 933-34, and *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (*en banc*)). When the alleged wrong constitutes a business decision by the whole board of directors, a court should employ the *Aronson* test, which evaluates whether, under the particularized facts alleged, a reasonable doubt is created that: 1) the directors are disinterested and independent; or 2) the challenged transaction was otherwise the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 812. In contrast, when the board members who decided the challenged act have since changed or when the challenged act does not constitute a business decision by the board, a court should employ the *Rales* test, which determines whether the particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, a majority of the board could have properly exercised its independent and disinterested business judgment in responding to a demand. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

Directorial "interest" exists whenever divided loyalties are present, or where the director will receive a personal financial benefit from a transaction that is not equally shared by the stockholders, or when a corporate decision will have a "materially detrimental impact" on a director but not the corporation or its stockholders. *Rales*, 634 A.2d at 936 (citations omitted). The personal benefit must arise "from the challenged transaction." *Id.* at 933. Director "independence"

exists when a director's decision is based on "the corporate merits of the subject before the board" rather than on "extraneous considerations or influences." *Aronson*, 473 A.2d at 816. When lack of independence is charged, the plaintiff must allege particularized facts showing that the board is either dominated by an officer or director who is the proponent of the challenged transaction, perhaps by a close personal or familial relationship or by force of will, or that the board is so under the director or officer's influence that its discretion is "sterilized." *Rales*, 634 A.2d at 936; *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002).

### B.  Defendants' Motion to Dismiss

Defendants move to dismiss the Amended Complaint on the grounds that Plaintiffs have still not sufficiently alleged that they owned CSC stock during the periods in which the questioned transactions occurred. CSC also moves to dismiss the Amended Complaint because Plaintiffs did not make a demand on CSC's board or plead particularized facts excusing demand.

#### 1.  Contemporaneous Ownership Requirement

The Court finds that Plaintiffs have not adequately pled their status as shareholders at all times relevant to the transactions of which they complain, as is required for standing under Federal Rule of Civil Procedure 23.1 and Nevada Rule of Civil Procedure 23.1. *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983), *accord Keever v. Jewelry Mountain Mines, Inc.*, 688 P.2d 317, 317-18 (Nev. 1984) (evaluating Nev. R. Civ. P. 23.1 and holding that a plaintiff who sold shares before the commencement of derivative action lacked standing). Plaintiffs' Amended Complaint challenges option grants that occurred from May 1996 to May 2004, as well as several stock sales extending into 2006. However, the earliest that any Plaintiff is alleged to have owned CSC stock is May 6, 1997. (AC ¶¶ 24-26.) Plaintiffs thus lack standing to challenge any stock option transaction that occurred

prior to this date, including the May 1996 grants that are targeted by the Amended Complaint.[7] Plaintiffs have standing to challenge the 1999, 2000, 2002 and 2004 stock option grants. Finally, individual Plaintiff Daniel Huffman's stock ownership allegation is sufficient to establish his standing as a CSC shareholder during the pendency of this action.

### 2. Demand Futility Analysis

The Court's renewed inquiry into whether demand is excused in this case is a narrow one. By way of brief background, when Plaintiffs filed their derivative suits in August and October 2006, CSC's board consisted of seven directors. All of CSC's board members were outside, non-employee directors, with the exception of Honeycutt, who was both CEO of CSC and Chairman of CSC's board. The directors' board and committee membership as of October 2006 was as follows:

- Honeycutt: insider, CEO of CSC since 1995, director since 1993 and Chairman of the board since 1997;
- Bailey: outsider, director since 1992, served on the Compensation Committee from 1996 until May 2004;
- Barram: outsider, director since November 2004;

---

[7] Plaintiffs' citation to a Delaware Chancery Court case, *Chirlin v. Crosby*, No. 6632, 1982 WL 17872 (Del. Ch. Dec. 7, 1982), for the proposition that derivative shareholder plaintiffs can challenge option transactions that occurred prior to the time they owned company stock under a "continuing wrong" theory is without merit. A closer reading of that case and subsequent cases clearly indicate that plaintiffs cannot use a "continuing wrong" exception to assert standing over claims based on option grants occurring before they became shareholders. *See, e.g., Chirlin*, 1982 WL 17872, at *1-*2 ("the device of employing language in the complaint to make out a continuing wrong for the purpose of circumventing the rule [requiring stock ownership at the time of the challenged transaction] will [not] be tolerated."); *Ryan v. Gifford*, 918 A.2d 314, 358-59 (Del. Ch. 2007) (holding plaintiffs lacked standing to challenge stock options transactions that occurred before they owned nominal defendant corporation's stock); *Desimone v. Barrows*, C.A. No. 2210-VCS, 2007 WL 1670255, at *11-*13 (Del. Ch. June 7, 2007) ("the continuing wrong doctrine does not bestow standing upon a stockholder to challenge transactions occurring before he bought his stock simply because they are similar or related to transactions or other conduct that occurred later").

-9-

- Baum: outsider, director since 1999;
- Chase: outsider, director since 2001;
- McFarlan, outsider, director since 1989, served on the Compensation Committee during 1996 and then not again until August 2004; and
- Patrick: outsider, director since 2004, served on the Compensation Committee since August 2004.

(*See generally* AC ¶¶ 28-52.)[8]

Previously, this Court found that the original complaint only raised a

---

[8] In support of the CSC Motion, Defendants have asked the Court to take judicial notice of the following documents: 1) CSC's SEC Schedule 14A Proxy Statements, filed on June 30, 2004, June 28, 2002, June 30, 2000, July 1, 1999 and July 5, 1995; 2) CSC's Form 10-Q filed on November 13, 1995; 3) certain sections of CSC's Restated Articles of Incorporation, dated June 11, 2003; and 4) CSC's Form 8-K, filed with the SEC on February 28, 2007. (*See* Defendants' Request for Judicial Notice in Support of the Motions to Dismiss by Computer Sciences Corporation and Director and Officer Defendants Pursuant to Fed. R. Civ. P. 12(b)(6), filed May 14, 2007.) Plaintiffs do not oppose Defendants' request. The Court therefore takes judicial notice of these documents under Federal Rule of Evidence 201, as they are: 1) public records filed with the SEC; 2) documents whose contents are alleged in Plaintiffs' Complaint; or 3) documents that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (court may take judicial notice of public records); *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (in evaluating Rule 12(b)(6) motion, court may consider documents external to the complaint by judicial notice or by incorporation by reference in the complaint); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("court documents whose contents are alleged in a complaint and whose authenticity no party questions . . . may be considered in ruling on a Rule 12(b)(6) motion to dismiss"), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

From these documents, the Court accepts as true the following relevant facts for the limited purpose of adjudicating the issues raised by the CSC Motion: 1) McFarlan and Patrick were not members of the Compensation Committee in May 2004; 2) in May 2004, the CSC board was comprised of the following eleven (11) directors: Honeycutt, Level, Hoover, Bailey, Baum, Chase, McDonnell, McFarlan, Mellor, Patrick and Rutledge; 3) in June 2002, the CSC board was comprised of the following ten (10) directors: Honeycutt, Level, Hoover, Bailey, Baum, Chase, McDonnell, McFarlan, Mellor and Rutledge; 4) in May 2000, the CSC board was comprised of the following nine (9) directors: Honeycutt, Level, Hoover, Bailey, Baum, McDonnell, McFarlan, Mellor and Rutledge; and 5) in May 1999, the CSC board was comprised of the following nine (9) directors: Honeycutt, Level, Hoover, Bailey, Lawton, McDonnell, McFarlan, Mellor and Rutledge.

reasonable doubt as to the interestedness of board member and CEO Honeycutt, who received the tainted options, and Compensation Committee members Bailey and McFarlan, who were particularly alleged to have been on that Committee when it approved the challenged option grants' timing and pricing. The original complaint did not allege with particularity that the option grants were reasonably attributable to other members or subcommittees of the board, including the Audit Committee and the Nominating and Corporate Governance Committee, or to the board as a whole. Since the challenged option grants were not alleged to have been a business decision or transaction approved by the entire board or even a majority of its members, the Court evaluated demand futility under *Rales* and not *Aronson*. Further, while Plaintiffs' original complaint raised a reasonable doubt as to the interestedness of directors Honeycutt, Bailey and McFarlan under the *Rales* standard, it did not do the same for directors Barram, Baum, Chase and Patrick, leaving a four-to-three majority of disinterested CSC board directors who could impartially consider a demand. Accordingly, the Court held that Plaintiffs' original complaint did not sufficiently plead that demand should have been excused in this case.

    With one exception, discussed next, the allegations in the Amended Complaint differ little from the original complaint in terms of establishing the interestedness of board or subcommittee members besides Honeycutt, Bailey and McFarlan. In fact, given that Plaintiffs currently lack standing to challenge the May 1996 option grants, which are the only grants that McFarlan was alleged to have approved by virtue of his Compensation Committee membership at that time, Plaintiffs' Amended Complaint ultimately points to fewer interested board members for the purposes of evaluating demand futility.

    Where the Amended Complaint does differ from its predecessor is in its heavy reliance on the Form 8-K statement that "[o]ption grants to Senior Executives were approved by the Compensation Committee or the Board of

Directors." Feb. 28, 2007 Form 8-K, at 4. A review of the Amended Complaint shows that this statement comprises the lynchpin of all of Plaintiffs' amended demand futility allegations, which are otherwise unchanged from the original complaint. Plaintiffs maintain that this statement in the Form 8-K constitutes an admission that the improper option grants were approved by the entire CSC board. Consequently, Plaintiffs argue that the *Aronson* test should apply to these whole-board decisions and that Plaintiffs should be excused from making a demand on the CSC board, which has publicly admitted its wrongdoing, regardless of whether the Court were to evaluate demand futility under the *Aronson* or *Rales* standard.

### a) *Demand Futility Standard under* Rales

The Court finds that demand futility in this case should be evaluated under *Rales* and not *Aronson*. Primarily, this is because the cited statement in the Form 8-K does not perform Plaintiffs' required task. Demand futility allegations must be made with requisite particularity, something the allegations in the Amended Complaint fail to accomplish even by incorporating the Form 8-K statement. Conclusory "allegations of facts or law not supported by allegations of specific fact may not be taken as true." *Levine*, 591 A.2d at 207. The Form 8-K merely states that options to senior executives were "approved" by the Compensation Committee "or" the board. Without more, this statement raises more questions than it answers. The Court is left to guess, for example: what does "approved" specifically mean – affirmative votes or other acts? Which entity – the whole board or the Compensation Committee - approved each option grant? Were the board-approved option grants backdated or springloaded, or were they part of the 4,330 unmodified, valid grants? Which board members specifically voted for each allegedly wrongful option grants and which did not? Were these the same board members who would consider a demand when the suit was filed? Did the specifically board-approved option grants require additional compensation

expense, or were those option grants fixed without material financial consequence? In short, the Form 8-K statements raise the possibility that the entire board approved certain challenged option grants sometime in the past, but they provide none of the requisite particularity in terms of transaction specifics or individual board member participation. A derivative plaintiff cannot show demand futility merely by generally "alleg[ing] that a majority of the directors participated in wrongful acts, without regard to their impartiality or to the protections of the business judgment rule." *Shoen*, 137 P.3d at 1180-81.

The Form 8-K does even less to demonstrate that individual board members knew of, let alone actively ignored or concealed, the wrongfulness of the option grants. One clear disclosure in the Form 8-K, in fact, states just the opposite. The entire Form 8-K centers on an internal investigation by a "Special Committee," comprised of "the two most recently elected independent directors," into the options grants between March 1996 and July 2006 that did not find "any intentional wrongdoing by current or former employees or directors." Feb. 28, 2007 Form 8-K, at 1. Plaintiffs ask the Court to treat this exculpatory statement as a sign of the board's recalcitrance and lack of impartiality in the face of clear wrongdoing, but this presumes that the whole board is responsible for any alleged wrongdoing. Demand futility allegations of director knowledge of, or direct participation in, wrongdoing require more specificity and substance than the Form 8-K statements and Plaintiffs' amended allegations provide.

Otherwise, the cited statements in the Form 8-K and the new claims of options springloading and re-pricing do not improve Plaintiffs' demand futility allegations in the Amended Complaint. Rather than clarify and strengthen the previous complaint's allegations that backdating, specifically, occurred, the amended allegations conflate and obscure which wrongful activity is being cited for each grant, only stating that backdating, springloading *"and/or"* re-pricing occurred. (*See* AC ¶¶ 1-21, 81 (emphasis added).) Just as the Court is left to guess

which type of wrongdoing occurred in each grant, it is also left wondering what particular role any one director played in the wrongful activity. The Amended Complaint also does not explain the details of any alleged "collusion" such that the challenged option grants are attributable to the entire board. For example, Plaintiffs still have not alleged with particularity which actions, omissions or communications would connect the members and actions of the various committees to each other and to the board as a whole, except to list the committees' and board's membership and their intersecting fiduciary duties and responsibilities under CSC's bylaws. For the purpose of excusing demand, Plaintiffs cannot rely on the directors' statutory duties to fill in these deficiencies in the factual particularity of its allegations. Finally, the Amended Complaint brings statutory claims for dissemination of false financial and proxy statements and other violations that might be otherwise attributable to a whole-board decision, but these claims have no factual basis independent of the alleged option grant activities. These discrete allegations do not amount to "concerted board action" with respect to the original option grant transactions. *Shoen*, 137 P.3d at 1185 n.63.

As it relates to the CSC board as of October 2006, the Amended Complaint arguably only makes particularized allegations as to Honeycutt, who received a substantial number of the backdated options, and Compensation Committee Defendant Bailey, who was most directly responsible for the timing, pricing and approval of the backdated option grants between 1999 and 2004 by virtue of his membership on the Compensation Committee when those grants occurred. (AC ¶¶ 136-40.) Compensation Committee member McFarlan cannot be said to be interested because Plaintiffs have no standing to challenge the May 1996 option grant, which was the only targeted option grant that occurred on his watch. Compensation Committee member Patrick joined that committee in August 2004 after the last challenged option grant had occurred in May, so his interestedness remains unfounded. The Amended Complaint thus only makes particularized

allegations with respect to the involvement and interestedness of two of the seven CSC board members for the challenged option grant transactions. No whole-board transaction is particularly alleged. Therefore, *Rales*, and not *Aronson*, continues to provide the proper standard for evaluating demand futility in this case.

### b) Demand Futility Analysis under Rales

For many of the reasons just described, Plaintiffs' Amended Complaint does not establish demand futility under *Rales*. It still lacks particularized allegations raising a reasonable doubt as to whether, as of the time the original complaint was filed in 2006, a majority of CSC's board could have properly exercised its independent and disinterested business judgment in responding to a demand. *Rales*, 634 A.2d at 934. Plaintiffs' amended allegations do not show that "a majority of the board members are interested in the decision to act on the demand or dependent on someone who is interested in that decision." *Shoen*, 137 P.3d at 1185. The Amended Complaint claims a "substantial likelihood" of liability for all of CSC's directors, but it does not, with the exception of Honeycutt and Bailey, sufficiently plead particularized facts supporting this allegation such that this risk of liability constitutes an "interestedness" preventing them from impartially considering a demand. *Guttman v. Huang*, 823 A.2d 492, 499, 502-03 (Del. Ch. 2003).

Even were the Court to accept the tenuous argument that that the Form 8-K statement ascribed approval for the challenged option grants to the entire board, a plaintiff cannot show that a director, or a whole board, is interested under the *Rales* test simply because the board approved of the transactions of which the plaintiff complains or failed to oversee subordinates who engaged in the questioned transaction. *Rales*, 634 A.2d at 934 n.9; *see also Guttman*, 823 A.2d at 505-07 (holding conclusory allegations that directors failed to prevent wrongdoing do not establish a "substantial likelihood" of personal liability). This is because "the mere

threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815; *see also Blasband v. Rales*, 971 F.2d 1034, 1049 (3d Cir. 1992) (holding that, under Delaware law, a plaintiff may not "bootstrap allegations of futility" by pleading merely that "the directors participated in the challenged transaction or that they would be reluctant to sue themselves"); *In re Silicon Graphics*, 183 F.3d at 990 (holding mere threat of liability for approving a questioned transaction, standing alone, is insufficient to challenge the independence or disinterestedness of directors). A director has a disabling interest for pre-suit demand purposes only where the potential for liability rises to a "substantial likelihood;" this would require more particularity in "the precise roles that these directors played at the company, the information that would have come to their attention in these roles, and any indication as to why they would have perceived the [wrongdoing]" than Plaintiffs' generalized allegations provide. *Guttman*, 823 A.2d at 503.

Finally, because the Form 8-K statements do not, in fact, improve Plaintiffs' amended demand futility allegations, Plaintiffs amended allegations of the interestedness of Compensation Committee members McFarlan and Patrick, all Audit Committee members, all Nominating and Corporate Governance Committee members and the board as a whole, fail for the exact same reasons described in the Court's prior Dismissal Order. (*See* Dismissal Order at 12-22.)

       *c)*    *Demand Futility Conclusions*

The Court is not blind to the fact that errors have been made in the granting of, and accounting for, stock options at CSC between 1996 and 2006. Some parties, whether directors, executives or both, are undoubtedly responsible, if not liable, for these errors. CSC's press releases and Form 8-K statements and other disclosures clearly indicate this much. The following, however, remains unclear:

1) what exact errors occurred; 2) to whom, specifically, are these errors attributable, whether by commission, omission, knowledge or concealment thereof; and 3) are these errors the product of wrongdoing constituting a breach of duty or rising to the level of legal fault? CSC's disclosures to date do not answer these questions, and Plaintiffs' Amended Complaint does not particularly allege answers to them either.

The Court is further cognizant of the fact that CSC directors and executives, perhaps even potentially liable ones, currently control the answers to these questions. Nonetheless, in a derivative case like this one, a board of directors is entitled to a presumption that they can and should be allowed to manage the business affairs of a corporation, including the decision of whether and how to investigate errors like these and whether ultimately to bring claims on the corporation's behalf. *Spiegel v. Buntrock*, 571 A.2d 767, 772-73 (Del. 1990). Whatever its merits or faults, the balance of power between derivative plaintiffs and the corporation (or its directors) in a derivative action is purposefully asymmetric, and the pleading standards more exacting, because of this presumption and the fact that a derivative plaintiff seeks to vindicate the corporation's interests, not just its own. Absent particularized allegations showing the board is unworthy of this deference, a derivative plaintiff must first make a demand on the board to investigate its claims. At this stage, this is what Plaintiffs in this case must do.

The Court finds that Plaintiffs' Amended Complaint raises a reasonable doubt as to the interestedness of directors Honeycutt and Bailey, by virtue of having allegedly received the tainted options or by virtue of having concurrently served on the committee that most directly controlled their timing, pricing and approval. Under *Rales*, two of the seven CSC directors are "interested," but the remaining five – Barram, Baum, Chase, McFarlan and Patrick – constituting a majority of the CSC board at the time the original complaint was filed in 2006, are

not. Accordingly, despite having had the opportunity to amend their complaint, Plaintiffs have still not shown that demand should be excused in this case.

## IV.

## CONCLUSION

Plaintiffs do not have standing to challenge the CSC option grants that occurred prior to the time that they purchased CSC stock on May 6, 1997. Further, Plaintiffs have not made particularized allegations raising a reasonable doubt as to the independence or disinterestedness of a majority of CSC's directors who would be considering a demand to investigate the challenged options grants. Therefore, under Rule 23.1, *Rales* and applicable Nevada law, Plaintiffs have not shown that demand is excused in this case.

For the above-stated reasons, the Court orders:

1) Nominal Defendant CSC's Motion to Dismiss Plaintiffs' Amended Shareholder Derivative Complaint for Failure to Plead Demand Futility Pursuant to Fed. R. Civ. P. 23.1 and 12(b)(6), filed May 14, 2007, is <u>GRANTED</u>;

2) Director and Officer Defendants' Motion to Dismiss Plaintiffs' Amended Shareholder Derivative Complaint Pursuant to Fed. R. Civ. P. 12 (b)(6), filed May 14, 2007, is <u>DENIED</u> as moot;

3) Defendant Thomas A. McDonnell's (Joined) Motion to Dismiss Plaintiffs' Amended Shareholder Derivative Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), filed May 14, 2007, is <u>DENIED</u> as moot; and

4) Plaintiffs' Amended Complaint is <u>DISMISSED WITH PREJUDICE</u>.

IT IS SO ORDERED.

DATED: August 9, 2007

Hon. Mariana R. Pfaelzer
United States District Judge

-18-